IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| BRIAN EVANS, | ) | CIVIL NO. 13-00262 SOM-BMK |
| | ) | |
| Plaintiff, | ) | ORDER REGARDING DEFENDANTS' |
| | ) | MOTIONS TO DISMISS (ECF NOS. |
| vs. | ) | 90 AND 92) AND GRANTING |
| | ) | PLAINTIFF'S MOTION TO |
| THE BOSTON RED SOX, et al., | ) | TRANSFER (ECF NO. 146) |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER REGARDING DEFENDANTS' MOTIONS TO DISMISS (ECF NOS.90 AND 92) AND GRANTING PLAINTIFF'S MOTION TO TRANSFER (ECF NO. 146)**

I.        **INTRODUCTION**

          Plaintiff Brian Evans, proceeding pro se, brings claims relating to a music video he filmed called "At Fenway."  See ECF No. 1.  In the present lawsuit he asserts claims for breach of contract, interference with contract, intentional infliction of emotional distress, and fraud against Defendant The Boston Red Sox and a number of individuals he says are connected with and acting on behalf of The Boston Red Sox (the court refers to these Defendants as "The Boston Red Sox Parties").  Evans also sues Defendant Rasky Baerlein Strategic Communications, Inc. ("RBSC"), a public relations and lobbying firm that Evans says worked in concert with The Boston Red Sox Parties to undermine Evans and his video.

          Before the court are two motions to dismiss, one filed

by The Boston Red Sox Parties challenging both subject matter jurisdiction and personal jurisdiction, <u>see</u> ECF No. 90, the other filed by RBSC challenging personal jurisdiction, <u>see</u> ECF No. 92. In addition, the court is faced with Evans's motion to transfer venue to Massachusetts as an alternative to dismissal.  <u>See</u> ECF No. 146.  The court concludes that it has subject matter jurisdiction but lacks personal jurisdiction over any Defendant. Instead of dismissing this action, the court grants the motion to transfer venue.

**II.        BACKGROUND.**

According to the Complaint in this matter, Evans is a citizen of Hawaii.  <u>See</u> ECF No. 1, PageID # 1-2 (indicating that Evans has a Hawaii address and intends to remain in Hawaii).  The Boston Red Sox Parties located in Massachusetts.  RBSC is a public relations firm with its principal office Boston, Massachusetts.  <u>See</u> Declaration of Lawrence B. Rasky ¶ 3 ("RBSC's principal office is located in Boston, Massachusetts"), ECF No. 92-2, PageID # 454.

It is undisputed that, in May 2011, while Evans was living in Hawaii, The Boston Red Sox Parties approached Evans about his song, "At Fenway."  <u>See</u> ECF No. 1, PageID # 2.  Later, in an e-mail, Larry Lucchino, co-owner of The Boston Red Sox, stated about the song: "It is awfully nice.  Let's find a way to make good use of it."  <u>See</u> ECF No. 1-1, PageID # 12.  David

Friedman, Vice-President of The Boston Red Sox, allegedly sent a letter to Evans's Hawaii address, stating that he was interested in exploring ways to use the song and giving Evans permission to contact other artists to develop a video featuring the song.  See ECF No. 1-2, PageID # 14.

Evans subsequently moved to Massachusetts.  See ECF. No. 1, PageID # 2.  Evans paid $40,000 to film the video at Fenway Park on September 25, 2012.  Id. at PageID # 3.

A week later, on October 5, 2012, in what appears at first blush to have been an unrelated event, Evans's mother died at Holy Family Hospital in Massachusetts.  Id.  Evans then created a website that criticized Holy Family Hospital, which was part of the Steward Health Care System, for alleged medical malpractice in the treatment of his mother.  Id.

Evans's attempts to profit from his video were unsuccessful.  Id. at PageID # 4.  The Boston Red Sox did not feature "At Fenway."  Id. at PageID # 6.  Evans alleges that, in declining to promote "At Fenway," The Boston Red Sox Parties were influenced by Steward Health Care System, which was allegedly unhappy about Evans's malpractice assertion.  Id. at PageID # 3-4.  Noting that The Boston Red Sox and Steward Health Care System are both represented by the same public relations firm, RBSC, Evans contends that the parties must have coordinated their actions and conspired against him.  Id.  He says that The Boston

3

Red Sox Parties and RBSC have interfered with his opportunities with other potential sponsorships and have conspired to "torpedo" or "destroy" his music video and related business relationships. Id. at 4-5.

Evans now lives in Hawaii.[1]

III.    **SUBJECT MATTER JURISDICTION.**

The Boston Red Sox Parties argue that the court lacks subject matter jurisdiction given the lack of diversity of citizenship. See ECF No. 90-1, PageID # 361. They contend that Evans and Defendants are all citizens of Massachusetts. Id. As evidence that Evans is a Massachusetts citizen, they point to his move to Massachusetts in July of 2011 and his residence there for a time. Id. at PageID # 363. They further contend that, because Evans at one time declared that Massachusetts was his home, while not having a residential or business mailing address in Hawaii, he is not a citizen of Hawaii. Id. at PageID # 364.

Under 28 U.S.C. § 1332(a), diversity jurisdiction requires complete diversity of citizenship between opposing parties at the time the action is commenced. See, e.g. Lew v. Moss, 797 F.2d 747, 749-750 (9th Cir. 1986). To demonstrate diversity of citizenship, a plaintiff must show that he is

---

[1] In other actions before this court, Evans has provided evidence establishing that he is currently a citizen of Hawaii. See e.g., Evans v. Cerberus Capital Management, L.P., Civ. No. 1300267, ECF No. 13-1.

"domiciled" in a location where he has established a fixed habitation, and intends to remain there permanently or indefinitely.  Id.  For purposes of diversity jurisdiction, domicile is determined at the time the lawsuit is filed.  Id. at 750.

Evans shows that, at the time he filed the Complaint in this matter, he was domiciled in Hawaii.  Evans listed a Hawaii address when he filed this action, had Hawaii identification documents, and allegedly intended to remain in Hawaii.  See ECF No. 1, PageID # 1-2 (alleging that Evans maintained his Hawaii identification documents, mailing address, and contacts, and incorporated his business in Hawaii).  This court concludes that there is complete diversity of citizenship.  There being no dispute that the other statutory requirement for diversity jurisdiction--an amount in controversy exceeding $75,000--is satisfied, this court exercises subject matter jurisdiction over this action.

## IV.       PERSONAL JURISDICTION

Of course, having subject matter jurisdiction does not necessarily mean this case should remain before this court.  The Boston Red Sox Parties and RBSC argue that this court lacks personal jurisdiction over them.  See ECF No. 90-1, PageID # 366; see ECF No. 92-1, PageID # 5.  Allegedly having little to no

contact or connection to Hawaii, they contend that this court lacks general and specific jurisdiction over them.  See ECF No. 90-1, PageID # 368; see ECF No. 92-1, PageID # 450.  The court agrees.

"Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits."  Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc).  This court considers two factors before exercising personal jurisdiction over a nonresident defendant in a diversity of citizenship case: "1) whether an applicable state rule or statute potentially confers jurisdiction over the defendant; and (2) whether assertion of such jurisdiction accords with constitutional principles of due process."  Flynt Distributing Co. v. Harvey, 734 F.2d 1389, 1392 (9th Cir. 1984), see Miracle v. N.Y.P. Holdings, Inc., 87 F. Supp. 2d 1060, 1064 (D. Haw. 2000).

The "jurisdictional inquiries under state law and federal due process merge into one analysis" when, as here, the state's long-arm statute is "co-extensive with federal due process requirements."  Roth v. Garcia Marquez, 942 F.2d 617, 620 (9th Cir. 1991).  See Cowan v. First Ins. Co. of Haw., 61 Haw. 644, 649, 608 P.2d 394, 399 (1980) ("Hawaii's long-arm statute, HRS § 634-35, was adopted to expand the jurisdiction of the

State's courts to the extent permitted by the due process clause of the Fourteenth Amendment."); see also Yahoo! Inc. v. La Ligue Contre Le Racisme et L'antisemitisme, 433 F.3d 1199, 1205 (9th Cir. 2006) ("Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same."); Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800-01 (9th Cir. 2004).  Accordingly, personal jurisdiction over The Boston Red Sox Parties and RBSC depends on federal due process requirements.

The Due Process Clause of the United States Constitution protects a defendant's "liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)). The Due Process Clause requires that Defendants have "certain minimum contacts with [Hawaii] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." See Int'l Shoe, 326 U.S. at 316.  See also Data Disc, Inc. v. Sys. Tech. Associates, Inc., 557 F.2d 1280, 1287 (9th Cir. 1977).  To have the required minimum contacts, The Boston Red Sox Parties and RBSC must have purposefully availed themselves of the privilege of conducting activities in Hawaii,

thereby invoking the benefits and protections of Hawaii's laws and leading them to "reasonably anticipate being haled into court" in Hawaii. <u>See</u> <u>Sher v. Johnson</u>, 911 F.2d 1357, 1361 (9th Cir. 1990) (quoting <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980)). Requiring "minimum contacts" performs two functions. "It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the States[,] through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." <u>World-Wide Volkswagen</u>, 444 U.S. at 292.

In applying the requirements of the Due Process Clause, courts have created two jurisdictional concepts--general and specific jurisdiction.

## A. General Jurisdiction

A court may exercise general jurisdiction over a defendant when the defendant is a resident or domiciliary of the forum state, or the defendant's contacts with the forum state are continuous, systematic, and substantial. <u>Helicopteros Nacionales de Columbia, S.A. v. Hall</u>, 466 U.S. 408, 414-16 (1984); <u>Schwarzenegger</u>, 374 F.3d at 801 ("the defendant must engage in continuous and systematic general business contacts . . . that approximate physical presence in the forum state" (quotations and citations omitted)); <u>Data Disc</u>, 557 F.2d at 1287 ("If the

nonresident defendant's activities within a state are 'substantial' or 'continuous and systematic,' there is a sufficient relationship between the defendant and the state to support jurisdiction even if the cause of action is unrelated to the defendant's forum activities.").

There is no dispute that The Boston Red Sox Parties and RBSC are not residents or domiciliaries of Hawaii and do not have continuous, systematic, and substantial contacts with Hawaii. See David S. Friedman Declaration ¶ 11 ("The Red Sox team does not have any offices, employees, agents or bank accounts in Hawaii and does not own, rent or lease any real property in Hawaii. The baseball team does not have any regular season or exhibition Major League Baseball games in Hawaii."), ¶ 12 ("aside from communications with plaintiff, since 2010, no employees or agents of the Red Sox have communicated with any persons in Hawaii regarding the licensing or production of music or other entertainment"), ¶ 13 ("the Red Sox made no direct ticket sales to any customers whose mailing addresses were in Hawaii."), ECF No. 90-2, PageID # 394; Rasky Decl. ¶ 14("RBSC's principal office is located in Boston, Massachusetts. It also has an office in Washington, D.C."), ¶ 3 ("RBSC has no office, no employees, and no current or past clients located or residing in the State of Hawaii."), ¶ 4 ("RSBC has never had an office in Hawaii, owned any property in Hawaii, or transacted any business in Hawaii."),

ECF No. 92-2, PageID # 454.

Because neither The Boston Red Sox Parties nor RBSC has had continuous, systematic, and substantial contacts with Hawaii, the court does not have general jurisdiction over those parties.

**B. Specific Jurisdiction**

Specific jurisdiction may be found when the cause of action arises out of a defendant's contact with or activities in the forum state.  See Roth, 942 F.2d at 620; Data Disc, 557 F.2d at 1287.  In Yahoo!, 433 F.3d at 1205-06, the Ninth Circuit noted that the exercise of specific jurisdiction is consistent with due process only under certain conditions:

(1) The nonresident defendant must have purposefully directed his activities or consummated some transaction with the forum or a resident thereof or performed some act by which he purposefully availed himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must arise out of or relate to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

The purposeful availment requirement protects a defendant from being haled into a jurisdiction merely because of random, fortuitous, or attenuated contacts with the jurisdiction,

10

or because of the unilateral activity of a third person.  Burger King, 471 U.S. at 475.  Jurisdiction is proper when "the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state."  Id. (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)).

In examining the purposeful availment requirement, this court analyzes "whether the defendant's contacts with the forum are attributable to his own actions or are solely the actions of the plaintiff."  Roth, 942 F.2d at 621; see also Gray & Co. v. Firstenberg Mach., Co., 913 F.2d 758, 760 (9th Cir. 1990). However, a defendant need not have been physically present or have had physical contact with the forum state, so long as the defendant's efforts were "purposefully directed" toward a forum resident.  Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998) (citing Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995)).

The Ninth Circuit's purposeful availment analysis is different for tort and contract actions.  See Roth, 942 F.2d at 621.  In the tort context, "the Court has allowed the exercise of jurisdiction over a defendant whose only 'contact' with the forum state is the 'purposeful direction' of a foreign act having effect in the forum state."  Id. (Quoting Haisten v. Grass Valley Med. Reimbursement Fund, 784 F.2d 1392, 1397 (9th Cir. 1986)). Unlike a tort, a contract with an effect in the forum state, by

itself, does not automatically establish the minimum contact
necessary for the exercise of personal jurisdiction over a
nonresident defendant.  Burger King, 471 U.S. at 478.  Instead, a
court must examine the circumstances surrounding the contract in
making that determination.  Accordingly, this court examines
"prior negotiations and contemplated future consequences, along
with the terms of the contract and the parties' actual course of
dealing."  Id. at 479.  "Parties who 'reach out beyond one state
and create continuing relationships and obligations with citizens
of another state' are subject to regulation and sanctions in the
other State for the consequences of their activities."  Id. at
473 (quoting Travelers Health Assn. v. Virginia, 339 U.S. 643,
647 (1950)).  "Thus, if the defendant directly solicits business
in the forum state, the resulting transactions will probably
constitute the deliberate transaction of business invoking the
benefits of the forum state's laws."  Decker Coal Co. v.
Commonwealth Edison Co., 805 F.2d 834, 840 (9th Cir. 1986).
"Similarly, conducting contract negotiations in the forum state
will probably qualify as an invocation of the forum law's
benefits and protections."  Id.

Specific jurisdiction must be established for each
claim separately.  See Data Disc. 557 F.2d at 1289 n.8 (9th Cir.
1997) ("Where, as here, a plaintiff raises two separate causes of
action, the court must have in personam jurisdiction over the

12

defendant with respect to each claim."). Therefore the court examines each of Evans's claims separately to determine whether it has specific jurisdiction over it.

### 1. Breach of Contract Claim

Evans's first claim is for breach of contract against both The Boston Red Sox Parties and RBSC. The court therefore must apply the contract standard described above to determine whether it has specific jurisdiction over The Boston Red Sox Parties and RSBC for the breach of contract claim. The court begins its analysis by examining whether Defendants purposefully availed themselves of the laws of Hawaii.

### a. Purposeful Availment

Evans says that he had some kind of contract with The Boston Red Sox Parties that The Boston Red Sox Parties breached.

A contract with an effect in the forum state does not, by itself, automatically establish the minimum contacts necessary for the exercise of personal jurisdiction over a nonresident defendant. Burger King, 471 U.S. at 478. Instead, a court must examine the circumstances surrounding the contract in determining whether there have been the required minimum contacts. Accordingly, this court examines "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." Id. at 479. "Parties who 'reach out beyond one state and create continuing

relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." Id. at 473 (quoting Travelers Heath Ass'n v. Virginia, 339 U.S. 643, 647 (1950)).

The Boston Red Sox Parties and RBSC argue that they did not purposefully avail themselves of the laws of Hawaii such that they can be sued in Hawaii for breach of contract. The court agrees.

While living in Hawaii, Evans was approached by The Boston Red Sox Parties about his song "At Fenway." See ECF No. 1, PageID # 2. Two representatives of The Boston Red Sox Parties sent various e-mail and mail communications to Evans expressing an interest in the song. See id. at PageID #12 and 14. One e-mail stated, "It ['At Fenway'] is awfully nice. Let's find a way to make good use of it." See id. at PageID # 12. Nothing before this court suggests that there was an actual contract created by their communications up to this point. Evans then moved to Massachusetts. See id. at PageID # 2. While in Massachusetts, Evans paid $40,000 to film the video at Fenway Park on September 25, 2012. See id. at PageID # 3. The resulting video was neither promoted by The Boston Red Sox nor aired at Fenway Park. See id. at PageID # 4. After this, Evans moved back to Hawaii.

Evans's breach of contract claim appears to have arisen out of events occurring outside of Hawaii. The only

14

communications between Evans and The Boston Red Sox Parties that occurred in Hawaii were several e-mails and a letter, none of which actually established any type of contract or agreement. Notably, Evans does not allege that he had any communications with RBSC at all.  The communications identified for the court between The Boston Red Sox Parties and Evans allegedly led to permission for Evans to develop a video without promising future endorsements or promotions.  Evans does not even allege that, while he was in Hawaii, The Boston Red Sox Parties committed to anything more than being interested enough to permit the making of his video.  Because he did indeed make the video, that commitment cannot be the basis of any claim.  At most, Evans alleges that, while he was in Hawaii, The Boston Red Sox Parties encouraged him to make the video.  The Boston Red Sox's alleged refusal to then air "At Fenway" also occurred outside of Hawaii.

If there was a contract, it appears to have been created in Massachusetts, even if preceded by preliminary discussions while Evans was in Hawaii.

### b.  Arising out of Forum-Related Activities

The second requirement for specific jurisdiction is that Evans's claims arise out of Defendants' forum-related activities.  See Panavision, 141 F.3d at 1322.  This requirement is not satisfied.  The actions allegedly leading to Evans's breach of contract claim appear to have occurred while Evans was

living in Massachusetts and did not involve Hawaii.  The only
forum-related activities identified by Evans were communications
between Evans and The Boston Red Sox Parties that did not contain
an agreement, and therefore that Evans does not appear to be
claiming directly caused the alleged breach of contract.

### c.   Reasonableness of Exercise of Jurisdiction

This leaves the final prong for adjudication--whether
the exercise of personal jurisdiction is reasonable.  Having
determined that Defendants have not purposefully availed
themselves of this forum and that the claims do not arise out of
or result from forum-related activities, the court is left
without a reasonable basis for exercising jurisdiction over them
in connection with the contract claim.

The court therefore concludes that it does not have
specific jurisdiction over Defendants with respect to Evans's
breach of contract claim.

### 2.   Interference with Contract Claim

Evans also sues for interference with contract.  The
court applies the tort standard described above to determine
whether it has specific jurisdiction over The Boston Red Sox
Parties and RSBC for the interference with contract claim.  The
court begins its analysis by examining whether Defendants
purposefully availed themselves of any benefit of doing business
in Hawaii.

### a.   Purposeful Availment

As stated previously, while Evans was living in Hawaii, Evans undeniably had communications with The Boston Red Sox Parties regarding the concept of "At Fenway."  See ECF No. 1, PageID # 2.  Evans then moved to Massachusetts and filmed his music video.  Id.  A week after he had filmed his video, Evans's mother died in Massachusetts.  Id. at PageID  # 3.  Evans subsequently created a website that criticized the hospital and Steward Health Care System for alleged negligence in the treatment of his mother.  Id.  Following this, and while still in Massachusetts, Evans apparently sought to promote "At Fenway." Id. at PageID # 4.  Evans attributes his failure to profit from his artistic efforts to a conspiracy between The Boston Red Sox Parties and RBSC.  Id.  He claims that, because Steward Health Care System and The Boston Red Sox Parties are both represented by the same public relations firm, RBSC, they must have coordinated their actions and conspired against him in retaliation for his criticism of Holy Family Hospital and Steward Health Care System on his website.  Id. at PageID # 3-4.  He alleges that this conspiracy led potential sponsors and promoters to decline to use his video.  Id.

In cases arising out of tort, the Ninth Circuit has recognized that a defendant purposely avails itself of a forum when the defendant allegedly (1) commits an intentional act, (2)

17

expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. Yahoo! Inc. 433 F.3d at 1206 (9th Cir. 2006).

Evans's interference with contract claim appears to arise from events occurring outside of Hawaii.  The conspiracy that allegedly prevented Evans from promoting and profiting from "At Fenway" existed outside of Hawaii.  Evans himself was in Massachusetts when this alleged conspiracy was formed and the alleged interference occurred.  Nothing in the record suggests any express aiming at Hawaii by any Defendant.

### b.    Arising out of Forum-Related Activities

The second requirement for specific jurisdiction is that Evans's claims arise out of Defendants' forum-related activities.  See Panavision, 141 F.3d at 1322.  The court must determine whether Evans would not have been injured "but for" Defendants' alleged conduct directed toward Evans in Hawaii.  See id.  This requirement is not satisfied.  The actions underlying Evans's interference with contract claim appear to have occurred while Evans was living in Massachusetts.

### c.    Reasonableness of Exercise of Jurisdiction.

The court turns to the issue of whether the exercise of personal jurisdiction is reasonable.  Because Defendants have not purposefully availed themselves of this forum and the

interference claim does not arise out of or result from forum-related activities, the court has no reasonable basis for exercising specific jurisdiction over Defendants with respect to that claim.

### 3. Intentional Infliction of Emotional Distress Claim.

Evans's third claim is a tort claim for intentional infliction of emotional distress against The Boston Red Sox Parties and RSBC.  Evans's intentional infliction of emotional distress claim appears to be tied to one or more of his other claims.  Applying the same analysis applied to those predicate claims, this court determines that it does not have specific jurisdiction over this claim.  At most, some of the distress Evans says he has suffered was felt by Evans in Hawaii, but not as a result of any action by any Defendant aimed at Hawaii.

### 4. Fraud Claim

Evans's final claim is for fraud.  Because the fraud claim is a tort claim that arises out of the same set of events previously described, the court concludes that it similarly lacks specific jurisdiction over the fraud claim.  The actions forming the basis of the fraud claim appear to have occurred outside of Hawaii and not to have been aimed at Hawaii.

### V. VENUE

Even if this court determined that it had personal jurisdiction, the case should not remain here.

Pursuant to 28 U.S.C. § 1391(b),

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such an action.

Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district or division where it might have been brought if it is in the interests of justice and convenient for the parties and witnesses.  This statute partially displaces the common law doctrine of forum non conveniens.  <u>Miracle</u>, 87 F. Supp. 2d at 1073.  While the relevant factors to consider are the same, a district court has broader discretion to transfer under § 1404(a) than under the forum non conveniens doctrine.  <u>Lung v. Yachts Int'l, Ltd.</u>, 980 F. Supp. 1362, 1370 (D. Haw. 1997). The purpose of § 1404(a) is to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.  <u>Id.</u> at 1369 (citing <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 616 (1964) (quotations omitted)).

Pursuant to 28 U.S.C. § 1391(b), venue in the District of Hawaii is not proper.  No Defendant is in Hawaii, a substantial part of the events giving rise to Evans's claims occurred outside of Hawaii, and this court has already determined that Defendants' conduct was not sufficient to establish personal jurisdiction.

Evans seeks a transfer in lieu of dismissal.  All Defendants and potential witnesses, except Evans, reside in Massachusetts.  The court therefore transfers this case to the District of Massachusetts under § 1404(a) based on the convenience of the parties and witnesses and the interests of justice.  Lung, 980 F. Supp. at 1370.

No party having discussed possible time bars, the court is also concerned that, if it dismisses the case, Evans's claims will ultimately be barred by applicable limitations periods. Because "both Congress and the States have made clear, through various procedural statutes, their desire to prevent timely actions brought in courts with improper venue from being time-barred merely because the limitation period expired while the action was in improper court," the court transfers this case in an abundance of caution to prevent any such occurrence.  See Oltman v. Holland Am. Line, Inc., 538 F.3d 1271, 1278 (9th Cir. 2008).

The convenience of the majority of the parties and the

interests of justice would best be served by trying this case in Massachusetts.  Under the circumstances, this court transfers this case to the District of Massachusetts.  In so doing, this court leaves it to that court to determine whether Evans states a cognizable claim that can survive a Rule 12(b)(6) motion.

This court is fully aware that the contract claim is completely devoid of any description of contract terms.  Evans says nothing about who entered into any contract or on what date. A party sued for breach of contract is entitled to some description of the contract terms that were allegedly breached. The interference with contract claim is similarly stingy on detail, and it is not clear what contract with what third party was allegedly interfered with by any Defendant. Evans's fraud claim, is, of course, subject to the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure.  These pleading matters are not, however, the subject of this court's ruling.  Having determined that it lacks personal jurisdiction and that this case should be transferred, this court leaves the sufficiency of the factual allegations to the District of Massachusetts to address.

If the court were to address pleading matters here and to find Evans's allegations wanting, this court would likely give Evans leave to file an amended complaint.  Given the other rulings in the present order, it makes sense to leave that entire

22

issue to the court that clearly does have personal jurisdiction.

**VII. CONCLUSION.**

Pursuant to Local Rule 7.2(d), the court decides these motions without a hearing.  While concluding that it has subject matter jurisdiction over this case, the court rules that it does not have personal jurisdiction over The Boston Red Sox Parties or RBSC with respect to each claim asserted in the Complaint.  Even if it could exercise personal jurisdiction, the court sees no reason to do so given the convenience of most of the parties and witnesses.  The court grants Evans's motion to transfer this case to the District of Massachusetts.

The Clerk of Court is directed to complete the transfer of this action no later than December 20, 2013.


IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 22, 2013.




/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge


Evans v. Boston Red Sox, et al.; Civil No. 13-00262 SOM/BMK; ORDER REGARDING DEFENDANTS' MOTIONS TO DISMISS (ECF NOS. 90 AND 92) AND GRANTING PLAINTIFF'S MOTION TO TRANSFER (ECF NO. 146)